UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION 20-0058-01 |
| VERSUS | JUDGE DONALD E. WALTER |
| MARTIN ESCALERA | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before the Court is a Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255, filed by Petitioner Martin Escalera ("Escalera"). See Record Document 48. The Government filed a response and Escalera filed a reply to the Government's response. See Record Documents 53 and 54. For the following reasons, Escalera's motion is **DENIED**.

### BACKGROUND

On February 17, 2020, a Louisiana State Trooper made a traffic stop of a 2020 Toyota Camry for drifting onto the solid white fog line. The driver was Martin Escalera. Escalera informed the trooper that he swerved because he was eating while driving. Escalera was asked to exit the vehicle and meet the trooper at the back of the car with his driver's license. When asked about his destination, Escalera explained that a trucking company had hired him to travel to Monroe, Louisiana, to pick up personal items for an employee out of a truck. Escalera could not pronounce Monroe, was not sure how long he was staying in Monroe, and did not know where he was going in Monroe. Escalera also exhibited nervous behavior throughout this exchange. Escalera presented the trooper with a rental agreement for the vehicle, which did not list Escalera as the driver or an additional driver. The trooper presented a consent to search form to Escalera, who consented to the search and signed the form.

The trooper searched the trunk area and saw a blanket covering a large blue ice chest with a white lid. The trooper noticed that there was an over spray of an off-white foam substance around the liner of the ice chest and foam shavings in the car. The trooper removed the ice chest and used an upholstery tool to pry back the liner and located multiple kilogram-sized packages of suspected cocaine. Escalera was advised of his Miranda rights. Thereafter, he made a voluntary statement wherein he admitted that the packages contained cocaine, he was transporting the cocaine, and there were approximately eight kilograms of cocaine inside the packages. Escalera also admitted transporting cocaine weekly since November of 2019.

On February 26, 2020, Escalera was indicted by a federal grand jury. See Record Document 10. The indictment charged him with possession with intent to distribute cocaine. On March 31, 2020, Escalera, through his appointed Federal Public Defender, filed a motion to suppress, arguing that the stop was unjustified, the continued detention was not reasonably related to the circumstances that caused the stop nor justified by reasonable suspicion of criminal activity, that his consent to search was not freely and voluntarily given, and that the Government could not prove a valid Miranda waiver or establish any intervening events sufficient to purge the taint of the illegal search and seizure. See Record Document 20. The Government opposed the motion to suppress. See Record Document 23. On August 11, 2020, Escalera withdrew the motion to suppress. See Record Document 27.

On September 24, 2020, Escalera pled guilty to one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). During the guilty plea, the Assistant United States Attorney stated, "However, [Escalera's attorney] and I did enter into plea agreements

where the defendant agreed not to pursue a motion to suppress and the government agreed not to file an 851 enhancement[1] in light of that." Record Document 51 at 8.

Because of the applicability of the career offender enhancement, Escalera's criminal history category was increased from a III to VI pursuant to United States Sentencing Guideline Section 4B1.1(b). His resulting guideline range, after including two prior felony convictions for controlled substance offenses, was 262 to 327 months. Escalera's attorney filed a sentencing memorandum in which she argued for a 120-month sentence, a sentence Escalera's attorney could only request after the Government agreed not to file a sentencing enhancement pursuant to 21 U.S.C. § 851. On February 4, 2021, Escalera was sentenced by this Court to 240 months in prison, a sentence below the guideline range. Escalera did not appeal.

On January 19, 2022, Escalera filed a motion for extension of time to file his Section 2255 motion, which was denied, as this Court lacked jurisdiction to consider the timeliness of a Section 2255 petition until actually filed.[2] See Record Documents 46 and 47. Escalera then filed the instant motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 on May 3, 2022, arguing equitable tolling to excuse the late filing. See Record Document 48. In his motion, Escalera argues that his counsel was ineffective: (1) during plea negotiations for not negotiating

---

[1] Title 21, United States Code, Section 851 is a statutory penalty enhancement for federal drug trafficking offenders with a prior felony drug conviction. To trigger these enhanced penalties, the Government must file a document providing notice of which prior convictions support the enhanced penalties.

[2] In the order denying the request for an extension of time, the Court advised Escalera that until a petition was actually filed, there was no case or controversy to be heard. The Court further advised that Escalera "may timely file a Section 2255 form or petition and **then** seek additional time to supplement that form or petition. In the alternative, Escalera may wish to argue equitable tolling should his petition be untimely due to the lockdown of his prison facility." Record Document 47 (emphasis added).

a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), (2) at sentencing for failing to show the Court an email regarding the withdrawal of the motion to suppress, and (3) for withdrawing the motion to suppress and not arguing therein that the search was beyond the scope of the consent. See Record Document 48. Before considering the merits of Escalera's Section 2255 motion, this Court must decide the issue of timeliness, as the Government argues that Escalera did not file his motion in accordance with the applicable statute of limitations. See Record Document 53.[3]

## LAW AND ANALYSIS

**A.     Timeliness.**

To review the merits of a motion under Section 2255, it must be filed within the statute of limitations. Title 28, United States Code, Section 2255(f) provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
>
> (1)   the date on which the judgment of conviction becomes final;
>
> (2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Here, Section 2255(f)(1) is controlling.

---

[3] Escalera also filed a reply to the Government's response. See Record Document 54.

In connection with the filing of a Section 2255 motion, "a conviction becomes final when a defendant's options for further direct review are foreclosed." United States v. Thomas, 203 F.2d 350, 352 (5th Cir. 2000). Escalera did not file a notice of appeal. His conviction therefore became final on the last day to file a timely notice of appeal, which would have been fourteen days after the judgment was entered on the docket. See Fed. R. App. P. 4(b). In Escalera's case, the judgment was entered on February 5, 2021. See Record Document 44. His conviction thus became final on February 19, 2021. He did not file the instant Section 2255 motion until May 3, 2022, which is beyond this time deadline. See Record Document 48; see also United States v. Franks, 397 F. App'x 95, 98 (5th Cir. 2010) (under the prison mailbox rule, a prisoner's motion is deemed filed the day the motion is deposited into a legal mailbox at the prisoner's correctional institution).

The statute of limitations in 28 U.S.C. § 2255(f) is not a jurisdictional bar, and it is subject to equitable tolling under extraordinary circumstances. Escalera points out that he filed a motion for extension of time in January of 2022, prior to his filing deadline, which was denied because it was not accompanied by a Section 2255 petition. He argues that he should receive the benefit of equitable tolling because COVID restrictions denied him access to the law library due to lockdowns. To warrant equitable tolling, the petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." United States v. West, 578 F. Supp. 3d 962, 966 (N.D. Ohio Jan. 5, 2022) (internal quotations and citation omitted). "[T]he COVID-19 pandemic does not automatically warrant equitable tolling for a petitioner who seeks it on that basis." Id. at 967 (internal quotations and citation omitted).

Escalera has provided documentation that shows that he has been incarcerated with the Federal Bureau of Prisons since May 18, 2021. The documentation further provides that the

facility where he was housed was in lockdown from February 4, 2020, through November 1, 2021, which includes Escalera's date of arrival to the facility. Thereafter, the facility was in lockdown from December 2, 2021, through February 10, 2022. Therefore, Escalera would have had the time from his sentencing on February 5, 2021, (which was presumably in state court custody) until he arrived in Bureau of Prisons custody on May 18, 2021, within which to pursue his Section 2255 motion outside of a COVID lockdown. Furthermore, while in Bureau of Prisons custody, Escalera would have had a month to pursue his Section 2255 motion outside of a COVID lockdown. He did, however, indicate an intent to pursue his motion by seeking an extension of time in January of 2022, which was within the statutory time limit.

Courts have concluded that the COVID-19 pandemic "could—in certain circumstances—conceivably warrant equitable tolling" for Section 2255 motions. United States v. Haro, No. 18-66, 2020 WL 5653520, at *4 (D. Neb. Sept. 23, 2020). The "certain circumstances" involve defendants who had been pursuing their rights diligently and would have timely filed if not for external obstacles caused by COVID-19. In cases where prisoners have sought equitable tolling due to prison lockdowns and the closure of prison law libraries as a result of COVID-19, "prisoners are not entitled to equitable tolling if there is no evidence that they diligently pursued their right to file a [Section] 2255 motion" prior to the lockdown. United States v. Thomas, No. 18-135, 2020 WL 7229705, at *2 (E.D. La. Dec. 8, 2020); see also United States v. Barnes, No. 18-154, 2020 WL 4550389, at *2 (N.D. Okla. Aug. 6, 2020) (assuming a COVID-19-related lockdown "delayed defendant's ability to file his motion," but concluding equitable tolling was unwarranted because the defendant did not demonstrate he diligently pursued his claims). Here, Escalera has failed to demonstrate that he diligently pursued his right to file a Section 2255 motion. His general arguments about lockdown and lack of access to the law library are insufficient to justify equitable

6

tolling. See Andrews v. United States, No. 17-1693, 2017 WL 6376401, at *2 (6th Cir. Dec. 12, 2017) ("Courts have consistently held that general allegations of placement in segregation and lack of access to legal materials are not exceptional circumstances warranting equitable tolling, especially where a petitioner does not sufficiently explain why the circumstances he describes prevented him from timely filing a habeas petition."). Escalera does not allege in any of his filings that he actually did anything that would arguably amount to diligent pursuit of his rights during the times that elapsed prior to the lockdown other than file his motion for extension of time. He also fails to establish a causal connection between his untimely filing and the lockdown. Instead, he focuses upon a lack of law library access and a general lack of resources and knowledge. That alone is insufficient. "Even in the case of an unrepresented prisoner alleging a lack of legal knowledge or legal resources, equitable tolling has not been warranted." Kreutzer v. Bowersox, 231 F.3d 460, 463 (8th Cir. 2000). "Pro se status, lack of legal knowledge or legal resources, confusion about or miscalculations of the limitations period, or the failure to recognize the legal ramifications of actions taken in prior post-conviction proceedings are inadequate to warrant equitable tolling." Shoemate v. Norris, 390 F.3d 595, 598 (8th Cir. 2004).

The Fifth Circuit has explained that "ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing." Fisher v. Johnson, 174 F.3d 710, 714 (5th Cir. 1999) (holding that lack of knowledge of the limitation period until after its expiration did not warrant tolling). To toll the limitations period, the lack of library access must have "actually *prevented* [the prisoner] from timely filing his habeas petition." Krause v. Thaler, 637 F.3d 558, 561 (5th Cir. 2011) (emphasis in original); see also Cruz v. Lumpkin, No. 21-610, 2021 WL 3710568 at *3 (N.D. Tex. Aug. 18, 2021).

7

Escalera has failed to provide any explanation as to why he could not have filed his Section 2255 motion during the first three months of his sentence or that he was diligently pursuing his rights during any of the eligible time period. Accordingly, his Section 2255 motion is not timely.

**B.     Section 2255 And Ineffective Assistance Of Counsel.**

Even if Escalera's motion was timely, his claims do not raise a constitutional issue under 28 U.S.C. § 2255.[4] Under 28 U.S.C. § 2255, a prisoner may move to vacate, set aside, or correct a sentence imposed by a federal court when: (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a); United States v. Scruggs, 691 F.3d 660, 666 (5th Cir. 2012). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Young, 77 F. App'x 708, 709 (5th Cir. 2003) (citation omitted).

"Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.'" Bousley v. United States, 523 U.S. 614, 622, 118 S. Ct. 1604, 1610 (1998) (internal quotations and citations omitted). Rather, after a defendant is convicted and exhausts the right to appeal, a court is "'entitled to presume that [the defendant] stands fairly and finally convicted.'" United States v. Shaid, 937 F.2d 228, 231–32 (5th Cir. 1991) (quoting United States v. Frady, 456 U.S. 152, 164, 102 S. Ct. 1584, 1592 (1982)).

---

[4] Section 2255(b) requires the court to hold an evidentiary hearing on a defendant's claim "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. In the instant case, it is clear to the Court, after a thorough review of the record and applicable jurisprudence, that Escalera is not entitled to relief. Therefore, an evidentiary hearing is unwarranted.

Courts may consider claims for ineffective assistance of counsel brought for the first time in a Section 2255 motion. See United States v. Gaudet, 81 F.3d 585, 589 (5th Cir. 1996). To successfully state an ineffectiveness claim, the petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). Failure to establish either prong of the Strickland test will result in a finding that counsel's performance was constitutionally effective. See id. at 696, 104 S. Ct. at 2069; see also Tucker v. Johnson, 115 F.3d 276, 280 (5th Cir. 1997). In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (quotations and citation omitted). If a tactical decision is "conscious and informed . . . [it] cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Crane v. Johnson, 178 F.3d 309, 314 (5th Cir. 1999).

To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. A defendant is not prejudiced if "the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S. Ct. 838, 844 (1993). Moreover, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are

insufficient to raise a constitutional issue." Green v. Johnson, 160 F.3d 1029, 1042–43 (5th Cir. 1998).

### 1. Ineffective Assistance During Plea Negotiations.

Escalera first contends that he was denied effective counsel in that his attorney did not negotiate a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). Rule 11(c)(1)(C) states that the plea agreement *may* specify that an attorney for the government will "agree that a specific sentence or sentencing range is the appropriate disposition of the case. . . ." Fed. R. Cr. P. 11(c)(1)(C). However, such plea agreements are very rarely used in this district and, as the rule itself states, such agreements are not mandatory. In Escalera's case, his attorney did negotiate a plea agreement pursuant to which he would face a lower mandatory minimum sentence, thus allowing room for the attorney to argue at sentencing for a downward departure. Escalera's attorney also vigorously argued for a sentence of 120 months both before sentencing through her sentencing memorandum and during sentencing. Ultimately, Escalera received a sentence below the advisory guideline range.

Escalera also contends that his attorney told him that he would receive a sentence of between 11 and 13 years but this assertion is contradicted by both the written plea agreement and the statements made by Escalera while under oath during his guilty plea. See Record Documents 34 and 51. Overall, Escalera has failed to show any ineffective assistance of counsel with regard to his plea of guilty.[5]

---

[5] If Escalera is somehow arguing that his counsel was ineffective for failing to inform him of the consequences of his guilty plea, the two-part Strickland test applies and to be successful, Escalera must show not only that his counsel's performance was deficient, but also that the deficient conduct prejudiced him. He must show that there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial but he has not shown a reasonable probability that he would have done so.

### 2.      Ineffective Assistance Due To Failure To Disclose Information.

Escalera next argues that his counsel was ineffective by failing to "advise the Court that she had in her possession an email exchange between herself and the prosecutor, [], which would have shown that [he] had traded [his] right to a Suppression Hearing for the 'enhancement' not to [be] used against me." Record Document 48 at 5. The email to which Escalera refers includes a discussion between his attorney and the Assistant United States Attorney wherein the two discussed the withdrawal of the motion to suppress if the Government did not move for a sentencing enhancement under 21 U.S.C. § 851. See Record Document 48, Attachment. However, contrary to Escalera's argument, the Court was aware of this agreement, as during the guilty plea, the United States Attorney clearly stated, "However, Ms. Martin and I did enter into plea agreements where the defendant agreed not to pursue a motion to suppress and the government agreed not to file an 851 enhancement in light of that." Record Document 51 at 8.

Additionally, Escalera fails to understand that the agreement that his counsel reached with the Assistant United States Attorney allowed his attorney to argue for a downward departure at sentencing, which could not have been done had the Government filed an enhancement pursuant to 21 U.S.C. § 851. It is not the fault of Escalera's attorney that the Court chose not to depart downward despite the arguments of his attorney. Had the enhancement been filed by the Government, however, Escalera's attorney would have been constrained in her argument and could not have requested a sentence of 120 months, but instead she would have been limited to arguing for a sentence of 180 months. There was no way for his attorney to know that these arguments would not ultimately be successful but the bargain she reached allowed her the opportunity to make an argument that would otherwise have been unavailable due to the enhancement. Therefore,

Escalera's attorney was not ineffective in the manner in which she handled the plea negotiations and the Section 851 email.

### 3. Ineffective Assistance Regarding The Motion To Suppress.

In his third and fourth arguments, Escalera attempts to litigate his motion to suppress, despite the fact that it was withdrawn in a bargained for exchange during plea negotiations. The handling of pretrial motions, such as motions to suppress, is considered trial strategy. See Schwander v. Blackburn, 750 F.2d 494, 500 (5th Cir. 1985). A strategic decision is viewed with "deference commensurate with the reasonableness of the professional judgment on which [it] is based." Strickland, 466 U.S. at 681, 104 S. Ct. at 2061.

Escalera's assertion that his counsel was ineffective for withdrawing his motion to suppress is without merit. "The filing of pretrial motions falls squarely within the ambit of trial strategy." Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984). Furthermore, the use of pretrial motions is entitled to heavy deference and should not be second guessed. See United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002) (citation omitted).

"To prevail on an ineffective assistance claims for withdrawal of a motion to suppress, a petitioner must prove that his Fourth Amendment claim is meritorious." United States v. Thompson, 44 F.3d 1004, No. 94-10337, 1995 WL 10514 at *4 (5th Cir. Jan. 3, 1995) (citing Kimmelman v. Morrison, 477 U.S. 365, 382-83, 106 S. Ct. 2574 (1986). "Because a knowing and voluntary guilty plea waives any contentions of ineffective assistance of counsel that do not relate to the voluntariness of the plea, [Escalera] must show that his counsel's withdrawal of the motion to suppress affected the voluntariness of his plea." Thompson, 1995 WL 10514 at *4.

Escalera's challenge to the search itself is without merit. He first contends that the search of the ice cooler in the trunk went beyond the scope of his consent. He asserts that he would not

have given the trooper consent to search if he had known the trooper was going to destroy the cooler. The Fifth Circuit has found that the grant by a defendant of general consent to search a car to encompass the search of containers within that car. See United States v. Mendoza-Gonzalez, 318 F.3d 663, 671-72 (5th Cir. 2003) (finding that general consent to search a trailer reasonably extended to a taped-shut cardboard box in the trailer); see also United States v. Mendoza, 817 F.3d 695, 701 (10th Cir. 2016) ("Defendant's consent was to a general search without limitations. His consent therefore extended to closed containers in this vehicle."). Escalera's case is similar to Mendoza-Gonzalez and United States v. Crain, 33 F.3d 498 (5th Cir. 1994). In both cases, officers searched vehicles pursuant to general consent. In Mendoza-Gonzalez, an officer cut open a taped box and in Crain, an officer opened a twisted and rolled up paper bag round under the driver's seat of a car and both searches were upheld.

In addition, Escalera was present during the search and did not attempt to stop or restrict the search at any time. See United States v. McSween, 53 F.3d 684, 688 (failure to object to breadth of search indicates that search was within scope of consent). As the Fifth Circuit aptly noted in United States v. Garcia, 604 F.3d 186, 190 (5th Cir. 2010), "When the officers requested permission to search the truck after asking [the defendant] whether he was carrying 'anything illegal,' it was natural to conclude that they might look for hidden compartments or containers." Accordingly, Escalera was not prejudiced by his counsel's failure to make a meritless objection. See United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim[.]").[6]

---

[6] Furthermore, Escalera cannot demonstrate that he was prejudiced by his attorney's actions. To demonstrate prejudice, "the defendant must show that there is a reasonable probability that, but for

13

## **CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that Escalera's Motion to Vacate, Set Aside, or Correct his Sentence, pursuant to 28 U.S.C. § 2255 (Record Document 48) is **DENIED**.

Pursuant to Rule 11(a) of the rules governing Section 2255 proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "Before entering the final order, the court *may* direct the parties to submit arguments on whether a certificate should issue." Rule 11(a) Rule Governing Section 2255 Proceedings for the United States District Courts (emphasis added). Unless a Circuit Justice or a Circuit or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.

In this instance, a certificate of appealability is **DENIED** because the applicant has failed to demonstrate a substantial showing of the denial of a constitutional right.

An order consistent with the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 14th day of November, 2022.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

---

counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.